UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FARREN ST. GEORGE,                    )
                                      )    NO.   CV-10-3076-LRS
              Plaintiff,              )
                                      )    ORDER GRANTING DEFENDANT'S
        -vs-                          )    MOTION FOR SUMMARY JUDGMENT
                                      )
PEXCO, LLC.,                          )
                                      )
              Defendant.              )
                                      )
                                      )
_____)

BEFORE THE COURT is Defendant's Motion for Summary Judgment (ECF No.
12).  This action arises out of the termination of Plaintiff St. George,
who worked at Pexco, LLC for approximately 15 years, and was laid off
during an economic downturn in July of 2009.  Plaintiff's original
Complaint alleges: (1)"Breach of Contract," because his "retaliatory
discharge" violated "the seniority provision in the event of a layoff,"
(2)"Wrongful Discharge" in violation of public policy, based on Title VII
and Washington's Law Against Discrimination (WLAD), (3)"State Based
Retaliation" under RCW 49.60.210(1), and (4)"Retaliation" under Title
VII.  Defendants assert that plaintiff's claims are time-barred, not
legally cognizable, or fail for lack of sufficient evidence and must be
dismissed.

/ / /

/ / /

ORDER - 1

**I. SUMMARY OF FACTS**

The following facts are undisputed, unless indicated otherwise. Pexco designs and fabricates extruded plastics products for use as components to manufacturers and end-users in the aerospace, retail, traffic safety, medical, lighting and fence industries. Pexco's Yakima, Washington plant employs over 190 people in multiple departments including Extrusion, Fabrication, Shipping & Receiving ("S&R"), Customer Service, Sales, Engineering, and Administrative support. Plaintiff began working for one of Pexco's predecessor entities in 1994. From about 2003 to 2009, he worked in S&R as a Materials Handler. His job duties primarily included pulling material from the plant's warehouse for Fabrication to use for customer orders, unloading material from trucks, conducting inventories of material, and occasionally taking parts to the painters.

Sometime prior to his July 2009 layoff, Plaintiff verbally complained to the Production Manager Wayne Crawford about Fabrication Supervisor Steve Jaussaud. Crawford maintains this conversation took place in late summer or early fall of 2008. Plaintiff maintains it took place in May 2009. Plaintiff did not work with or report to Crawford or the Fabrication Supervisor. However, Plaintiff decided to speak directly with Crawford because Jaussaud reported to Crawford. Plaintiff's primary complaint was that the Fabrication Supervisor had recently gone "behind his back" to tell his direct supervisor, Warehouse Supervisor Teresa Taylor, that Plaintiff was standing idle and not

working.    Further,  Plaintiff  alleged  Jaussaud  had  called  him  "Jerry
fucking Maguire."   At the end of the conversation, Plaintiff added that
his step-daughter, a Pexco employee who directly reported to Jaussaud,
had told Plaintiff that she felt harassed by comments Jaussaud had made
to her.

In response, Crawford told Plaintiff he would investigate, and asked
Plaintiff to encourage his step-daughter to report her complaints herself
to the HR Manager or him.   Plaintiff asked Crawford to not pass along his
complaints  to  anyone-particularly  to  Plant  Manager  Martin  Streich.
Crawford spoke with Jaussaud about the complaints.   Jaussaud admitted to
making the "Jerry Maguire" comment.   Jaussaud denied, however, making
inappropriate  comments  to  Plaintiff's   step-daughter.    Nevertheless,
Crawford cautioned Jaussaud to remain professional in interacting with
both  Plaintiff  and  his  step-daughter.    Crawford  followed  up  with
Plaintiff shortly thereafter to let him know that he had spoken with
Jaussaud and to restate that Plaintiff should feel free to bring issues
to him at any time.   Plaintiff thanked Crawford.   Crawford did not share
the  substance   or  fact  of  Plaintiff's  complaint  with  Streich,  as
Plaintiff requested.   Crawford assumed that the issues had resolved,
because he had no further reports from Plaintiff or his step-daughter.

Plaintiff's  employment  with  Pexco  was  covered  by  a  collective
bargaining agreement (CBA) between his union, District Lodge 751 of the
International  Association  of  Machinists  and  Aerospace  Workers  (the
"Union")  and  Pexco's  Yakima  plant.    In  2008-2009,  like  most  other

businesses, Pexco experienced an economic downturn.  In July 2009, Pexco determined that it needed to reduce the size of its Yakima workforce by eight positions due to a 32% decrease in sales and a forseeably dim forecast.  Plant Manager Martin Streich, together with the Vice President of Sales and Chief Operating Officer of Pexco determined the departments to reduce and the number of positions to eliminate per department without input from Streich's subordinates.  They decided to reduce S&R by one worker. Accordingly, Plaintiff was laid off along with seven others from different departments on July 28, 2009.

On August 3, 2009, the Union filed a grievance on his behalf, claiming that his "skills and abilities were not properly evaluated" under Article 10 of the CBA.[1]  Specifically, the grievance claimed that Plaintiff should have been given the Receiving Clerk position occupied by an employee with less seniority.  In January 2010, Plaintiff filed a charge with the Equal Employment Opportunity Commission, which was dismissed.  On September 10, 2010, Plaintiff filed the Complaint presently at issue.

/ / /

/ / /

---

[1]Article 10, Section 5 of the CBA provided that, in the event of a layoff, Pexco would "first consider the skills, abilities, and experience necessary to staff the jobs remaining after the layoffs in the particular department affected."  It also provided that if Pexco determined "that the skills and abilities of the employees under review are relatively equal," it would lay off employees "in reverse bargaining unit seniority order."

ORDER - 4

**II.  ANALYSIS OF CLAIMS**

    **A.  Wrongful Discharge in Violation of Public Policy Tort Claim**

    Plaintiff has withdrawn this claim.  ECF. No. 21, at 2.

    **B.  Breach of Contract Claim**

    Plaintiff has withdrawn this claim.  ECF. No. 21, at 2.

    **C.  State and Title VII Retaliation Claims**

    In his Complaint, Plaintiff claims that his layoff violated "public policy" recognized in RCW 49.60.210 and in 28 U.S.C. § 2000e-3. Defendants first argue that Washington's Supreme Court has never permitted a plaintiff to allege both a Washington's Law Against Discrimination ("WLAD") retaliation claim and a tort for wrongful discharge in violation of anti-retaliation policy. As noted above, Plaintiff has withdrawn his wrongful discharge tort claim.

    1.  WLAD Retaliation Claim.

    Plaintiff contends that the May 2009 complaint he made regarding the alleged harassment of his step-daughter was a significant factor in his discharge. In support of this proposition, Plaintiff states that Plant Manager Martin Streich began to ignore him within a week of the initial complaint and this behavior allegedly continued on 6 or 7 additional occasions.  Plaintiff further argues that  the layoff notice, effective July 28, 2009, included the elimination of 5 extrusion operator positions and 1 position from Shipping and Receiving. ECF No. 21, at 13. Plaintiff states there were 5 positions in Shipping & Receiving, only 2 of which were senior to him.[2]   A person in one of the less senior

---

    [2]In July 2009, the Shipping & Receiving Department was comprised of: the Warehouse Supervisor, one Shipping Clerk, one Receiving Clerk,  and three Materials Handlers.  Plaintiff was a Materials Handler.  ECF No.

positions, Shipping Clerk Kim Taylor, offered to leave so Plaintiff wouldn't have to be laid off.  Pexco refused Kim Taylor's offer stating the training required for that position would be more than minimal. According to Plaintiff, when Ms. Taylor left in mid August, Pexco replaced her with someone with no prior experience and had to provide the training it allegedly wouldn't provide to Plaintiff.  Plaintiff believes he would not have needed as much training in the Shipping Clerk position as the person selected.  Plaintiff also states that, according to Ms. Taylor, Plaintiff could have been easily trained to do the Shipping Clerk job.  Plaintiff also states that, according to former employee Dan Fulks, who did the Receiving Clerk job, training for Plaintiff would take about 2 weeks.  Plaintiff concludes all of these facts demonstrate Defendant Pexco's decision was not a legitimate business decision.

Plaintiff maintains his retaliation claims under Title VII and WLAD are not based upon violations of the CBA's seniority provisions. Rather, Plaintiff maintains his retaliation claims are based upon allegations that Pexco, through its employees, discriminated against him, including terminating his employment, after he complained to management about the sexual harassment his step-daughter allegedly faced from her supervisor, Steve Jaussaud.  It is only in response to Pexco's claim of legitimate business reason that the CBA language is raised.

Defendant replies to Plaintiff's argument that laying off the least senior materials handler was an internal inconsistency because the Shipping Clerk Ms. Taylor offered to resign.  Defendant argues that the layoff notice was for one position, not one employee.  Further, Defendant

15, at 7.

ORDER - 6

explains, it eliminated a materials handler position, which is not necessarily interchangeable with the S&R clerk position. Plaintiff's only proof that he was qualified to be a S&R clerk is his own self-serving personal testimony, which does not create a genuine issue of material fact. Finally, Defendant points out that it eliminated a materials handler position as it was the only one in S&R with redundancy[3] and Pexco selected the least senior Materials Handler, which was Plaintiff.

Defendant asserts that Plaintiff admits or fails to challenge key facts that demonstrate Pexco's legitimate, non-retaliatory reasons for his lay-off and that Pexco should be granted summary judgment. Defendant asserts Plaintiff's claims-no matter what he calls them-cannot be analyzed without considering the CBA provisions. Defendant argues Plaintiff's claims are preempted by §301 of the Labor Management Relations Act, 28 U.S.C. § 185(a), and are time-barred by the applicable 6 month statute of limitations. Defendant contends that the proper method to address whether Pexco breached its obligations under Article 10 is either through the CBA's grievance provisions or by bringing a timely § 301 claim. Although Plaintiff brought a grievance, Plaintiff has failed to exhaust the CBA's grievance procedures by going to arbitration; failed to allege that his Union breached its "duty of fair representation" in handling his grievance; and failed to bring a timely § 301 claim (breach of the CBA) within the National Labor Relations Act's

---

[3]Pexco decided to reduce the number of materials handlers by one position because it was the only S&R position with more than one employee. Plaintiff does not dispute he was the least senior materials handler. ECF No. 15, at 7.

ORDER - 7

6 month statute of limitations.

To assert a claim for wrongful termination in violation of public policy under Washington Law, a plaintiff must show: (1)the existence of a clear public policy ("clarity"), (2)that discouraging the conduct in which a plaintiff engaged would jeopardize the public policy ("jeopardy"), (3) that the public-policy-linked conduct caused the dismissal ("causation"), and (4)the defendant must not be able to offer an overriding justification for the dismissal ("the absence of justification"). *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941 (1996). To satisfy the jeopardy element, a plaintiff must "show that other means of promoting the public policy are inadequate," which is a question of law. *Korslund v. Dyncorp. Tri-Cities Srvcs.*, 156 Wn.2d 168, 181-82 (2005).

Here, Plaintiff does not dispute Pexco's business reasons for the July 2009 layoffs and its need to reduce the number of Yakima employees due to quantifiable declining sales, including eliminating a position in S&R. Plaintiff does not challenge Pexco's explanation that Supply Chain Manager Steve Cyr and Plant Manager Martin Streich selected a materials handler position for elimination because it was the only S&R position with redundancy. Plaintiff fails to provide any evidence that any of the decision makers for his lay-off (Steve Cyr or Martin Streich) knew of his earlier complaint.[4]  The only challenge to a decision maker is his personal speculation that the Plant Manager must have known about his complaint because he (Streich) "avoided" talking to him (Plaintiff)

_____

[4]Defendant's witness states Plaintiff's complaint occurred in late summer or early fall of 2008; Plaintiff maintains his verbal complaint was made in May 2009.

ORDER - 8

1  "6 or 7" times.

2       Plaintiff does not dispute that his direct supervisor, Teresa
3  Taylor, and his manager, Steve Cyr, honestly believed his computer
4  skills were inadequate for either S&R clerk positions without training.
5  Plaintiff admits the CBA governed the terms of his employment, and
6  contained provisions describing Pexco's duties related to seniority,
7  layoffs, and recall, and that he was concerned Pexco failed to follow the
8  CBA for his layoff.  Plaintiff admits his union communicated a full time
9  reinstatement offer to him after he had his union file a grievance.[5]  The
10  Court finds these facts undermine Plaintiff's claim that his lay-off was
11  directly linked to his complaint concerning his step-daughter, in which
12  Plaintiff specifically asked Crawford to not pass along his grievance to
13  anyone-particularly to Streich.

14      Moreover, and most importantly, Plaintiff's retaliation claims,
15  regardless of how they are described, are substantially dependent on the
16  CBA's terms, which raise issues regarding § 301 preemption and the
17  statute of limitations.  Plaintiff has specifically claimed Pexco
18  violated the CBA's "seniority provisions" when it included him in the
19  July 2009 layoff.  Thus, the Court must interpret the CBA to see whether
20  Defendants "legitimate" reason for Plaintiff's layoff rings true.  It is
21  well-settled that if the asserted cause of action involves a right
22  conferred upon an employee because of a CBA, then the claim is preempted

23  _____

24      [5]Plaintiff contends he was entitled to a "call" from the Plant
    Manager extending the offer for a full-time extrusion operator position.
25  award after that date.  A plaintiff's unreasonable rejection of an
    unconditional offer of reinstatement to substantially comparable
26  employment constitutes failure to mitigate, which ends the accrual of
    back pay.  *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982).

ORDER - 9

by § 301 of the Labor Management Relations Act, 28 U.S.C. § 185(a) ("§301"). *Cramer v. Consol. Freightways, Inc*., 255 F.3d 683, 691 (9th Cir. 2001) (*en banc*). Plaintiff's claim invokes CBA rights.

It is unquestionable that an outright claim based on a right afforded by the CBA is preempted. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Harper v. San Diego Transit Corp*., 764 F.2d 663,667 (9th Cir. 1985). Because determination of Defendants' legitimate reasons for Plaintiff's layoff inevitably involve contract interpretation, the remaining claims should be dismissed for failure to utilize contract grievance procedure or dismissed as preempted by §301. Even assuming the retaliation claims were independent of the CBA or that its interpretation was not implicated, however, the Court finds Defendants are able to offer an overriding justification for the layoff based on undisputed facts of record.

2.  Title VII Retaliation Claim.

In his Complaint, Plaintiff claims that his layoff also violated "public policy" recognized under federal law in 28 U.S.C. § 2000e-3. To state a retaliation claim, plaintiff must show (1) he engaged in a protected activity, such as the filing of a complaint alleging sexual harassment; (2) Pexco subjected him to an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Hardage v. CBS Broad Inc*., 427 F.3d 1177, 1188 (9th Cir. 2005)(affirming dismissal of Title VII retaliation claim). Although plaintiff's complaint regarding his step-daughter was arguably a "protected activity," and his layoff was an "adverse employment action," Plaintiff lacks sufficient evidence to link his complaint to his inclusion in the

plant-wide layoff.   Further, as discussed above, Plaintiff cannot demonstrate that his inclusion in the eight-person layoff was linked to his arguably protected activity or that Defendants legitimate reasons for his layoff were pretextual for unlawful retaliation.   For the foregoing reasons stated above, in the WLAD Retaliation Claim section, the Court grants summary judgment on this claim as well.

**IT IS ORDERED:**

1.   Defendant's Motion for Summary Judgment on Plaintiff's claim of Wrongful Discharge in Violation of Public Policy is **GRANTED**. This claim is dismissed with prejudice.

3. Defendant's Motion for Summary Judgment on Plaintiff's claim for Breach of Contract is **GRANTED**. This claim is dismissed with prejudice.

4. Defendant's Motion for Summary Judgment on Plaintiff's claim for "State Based Retaliation" under RCW 49.60.210(1)is **GRANTED**.

5. Defendant's Motion for Summary Judgment on Plaintiff's claim for "Retaliation" under Title VII is **GRANTED**.

6.   All claims are dismissed with prejudice.

The District Court Executive is directed to file this Order, enter judgment consistent with this order, provide copies to counsel, and CLOSE FILE.

**DATED** this 23rd day of November, 2011.

/s/ *Lonny R. Suko*
_____
                LONNY R. SUKO
        UNITED STATES DISTRICT JUDGE

ORDER - 11